UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 1:21-cv-640-ALM-KLL |
| | ) |
| v. | )   Hon. Algenon L. Marbley |
| | ) |
| ALTIVIA PETROCHEMICALS, LLC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**UNITED STATES' UNOPPOSED MOTION
FOR ENTRY OF CONSENT DECREE**

The United States seeks entry of a proposed Consent Decree, lodged with this Court on September 22, 2022, resolving claims against ALTIVIA Petrochemicals, LLC ("Defendant") pursuant to Clean Air Act (CAA) Section 113(a)(3), 42 U.S.C. § 7413(a)(3), for injunctive relief and civil penalties for violations at Defendant's petrochemical manufacturing facility in Haverhill, Ohio.  During the 30-day public comment period, the United States did not receive any comments.  The United States continues to believe that the proposed settlement is fair, reasonable, and consistent with the purposes of the CAA.  ALTIVIA has consented to entry of the Consent Decree. Dkt. 2-1 (CD ¶ 115).  The United States, therefore, requests that the Court enter the proposed Consent Decree.

**Procedural History**

On October 5, 2021, the United States, on behalf of the United States Environmental Protection Agency (EPA), filed a Complaint asserting seven claims pursuant to the CAA for the

following alleged violations: (i) failure to control process vent 202-F; (ii) failure to perform proper Method 21 monitoring at affected valves; (iii) failure to monitor each valve in gas/vapor service or light liquid service once per year; (iv) failure to monitor each connector in gas/vapor service or light liquid service once per year; (v) failure to control emissions from CHP and phenol individual drain systems; (vi) failure to control emissions from liquid streams in CHP1, CHP2, and phenol open systems; and (vii) failure to control Group 1 wastewater streams for Table 9 compounds at the facility's open biological wastewater treatment unit (Dkt. 1).

On September 22, 2022, the United States filed a *Notice of Lodging of Consent Decree* (Dkt. 2) and lodged with the Court a proposed Consent Decree (Dkt. 2-1) between the United States and ALTIVIA to resolve the allegations in the Complaint, pending public notice and comment on the Consent Decree.  In accordance with 28 C.F.R. Part 50.7, on September 29, 2022, the U.S. Department of Justice published a notice in the *Federal Register*, advising the public of the lodging of the proposed Consent Decree and inviting the public to comment on it during a 30-day period commencing with the date of publication of the notice.  *See* 87 Fed. Reg. 59119-20.  The United States did not receive any comments during the public comment period.

## Background

ALTIVIA acquired the assets of Haverhill Chemicals in 2015, following that entity's filing for Chapter 11 bankruptcy.  This acquisition included the Haverhill Facility, a petrochemical plant located in southern Ohio.  The Haverhill Facility manufactures phenol, an additive in many products, such as detergents, herbicides, and pharmaceutical drugs.  Cumene is the primary chemical used in the synthesis of phenol.  Both cumene and phenol are organic hazardous air pollutants.  The Haverhill Facility had been shut down in June 2015 and, following the acquisition, ALTIVIA restarted operations there in November 2015.  Many of the violations

2

asserted in the Complaint occurred during the months following ALTIVIA's takeover of the Facility's operations.

EPA conducted an unannounced inspection of the Haverhill Facility in May 2017. EPA's inspection focused on fugitive emissions at the Facility, as regulated by the leak detection and repair (LDAR) provisions of the Hazardous Organic NESHAP (HON). During the inspection, EPA monitored valves for leaks in accordance with Method 21 requirements. EPA compared its identified leak rate (2.2%) with that previously reported by ALTIVIA (< 0.5%) and concluded that ALTIVIA had been improperly performing its Method 21 monitoring. A facility's leak rate determines the requisite frequency for monitoring for leaks of hazardous air pollutants.

During the inspection, EPA also identified a tank (Unit 202-F) that lacked emissions controls and various deficiencies in the maintenance of covers for sewer access points. Following the inspection, ALTIVIA provided various records that identified insufficient monitoring of valves and connectors, primarily for the year and a half following its acquisition of the Facility. EPA issued ALTIVIA a Finding of Violation in September 2017. When settlement negotiations proved unsuccessful, the United States filed this action in October 2021. The Parties, however, continued settlement negotiations and eventually agreed on the proposed Consent Decree before this Court.

## **Proposed Consent Decree**

### 1. **Injunctive Relief.**

The proposed Consent Decree would require ALTIVIA to implement comprehensive injunctive relief designed to bring the company into compliance with the HON. The proposed Consent Decree requires ALTIVIA to implement controls on emissions from Unit 202-F (CD

3

¶ 51). Currently, air emissions from Unit 202-F escape through a roof monitor directly into the atmosphere. ALTIVIA will now route all such emissions to an existing thermal oxidizer. The proposed Consent Decree also addresses EPA's allegations regarding poorly sealed manholes and pipe trenches with contaminated standing water, by requiring supplemental inspections and Method 21 monitoring of those areas (CD ¶¶ 53-55).

Notably, the proposed Consent Decree requires implementation of a comprehensive Enhanced LDAR Program (Section V). Under this five-year program, ALTIVIA will conduct monitoring of equipment on a more frequent basis than required by the HON (CD ¶¶ 13-15) and such equipment will be deemed "leaking" and subject to repair or replacement at lower leak detection and repair levels than otherwise required (CD ¶¶ 16-17). Additionally, the Enhanced LDAR Program requires creation of a facility-wide LDAR document describing ALTIVIA's LDAR compliance program (CD ¶ 12), implementation of a valve replacement and improvement program (CD ¶¶ 26-38), and enhanced employee training and QA/QC of LDAR efforts (CD ¶¶ 40-42).

Significantly, the proposed Consent Decree requires that a third-party perform LDAR audits of the Facility in the first, third, and fifth year following the date of lodging (CD ¶¶ 43-47). Auditors will review ALTIVIA's compliance with all applicable LDAR regulations and conduct comparative monitoring to assess the accuracy of ALTIVIA's Method 21 monitoring efforts. ALTIVIA will be required to develop and implement a Corrective Action Plan to address any deficiencies identified by the audits (CD ¶ 48).

### 2. Civil Penalty

The proposed Consent Decree includes the requirement that ALTIVIA pay a civil penalty of $1,112,500, with interest accruing from the date of lodging (CD ¶ 8). The civil penalty was

calculated consistent with the *Clean Air Act Stationary Source Penalty Policy*, dated April 25, 1991 and Appendix VI (Leak Detection and Repair) thereto.[1] It is appropriate that the company should pay a substantial penalty given the seriousness and extensive scope of the violations. The penalty, however, also takes into account the company's cooperation during the negotiations.

### Standard of Review

The "criteria to be applied" when a court determines whether to approve a proposed consent decree "are whether the decree is 'fair, adequate, and reasonable, as well as consistent with the public interest.'" *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010), *quoting United States v. County of Muskegon*, 298 F.3d 569, 580-81 (6th Cir. 2002); *see also United States v. George A. Whiting Paper*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with [the environmental statute's] goals, and substantively and procedurally fair."). This standard of review is consistent with the standard of review that pertains to consent decrees generally. *See Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable, and adequate"); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985).

This limited standard of review reflects a public policy that strongly favors settlements of disputes without protracted litigation. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Settlements conserve the resources of the courts, the litigants, and the taxpayers and "should . . . be upheld whenever equitable and policy considerations so permit." *Id*. This is particularly true in disputes involving environmental violations "where voluntary compliance by

---

[1] U.S. EPA's *Clean Air Act Stationary Source Civil Penalty Policy* is available at: http://www2.epa.gov/enforcement/clean-air-act-stationary-source-civil-penalty-policy-october-25-1991.

the parties . . . will contribute significantly toward ultimate achievement of statutory goals."

*Kelly v. Thomas Solvent Co.*, 717 F. Supp. 507, 516 (W.D. Mich. 1989) (citations omitted).

Approval of a settlement is committed to the informed discretion of the trial court.

*United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Donovan v.*

*Robbins*, 752 F.2d 1170, 1176-77 (7th Cir. 1985); *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir.

1984). Courts, however, usually exercise this discretion in a limited and deferential manner. For

example, the Court does not have the power to modify a settlement; it may only accept or reject

the terms to which the parties have agreed. *See United States v. Akzo Coatings of America, Inc.*,

949 F.2d 1409, 1435 (6th Cir. 1991); *Jones & Laughlin Steel Corp.*, 804 F.2d at 351. Further, in

reviewing a consent decree, "the controlling criteria is not what might have been agreed upon . . .

nor what the district court believes might have been the optimal settlement." *United States v.*

*Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989) (citations omitted), *aff'd,* 899

F.2d 79, 84 (1st Cir. 1990) (court determines "not whether the settlement is one which the Court

itself might have fashioned, or considers as ideal, but whether the proposed decree is fair,

reasonable, and faithful to the objectives of the governing statute"); *see also Officers for Justice*

*v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982); *Thomas Solvent Co.*, 717 F. Supp. at

515.

Finally, the balancing of competing interests affected by a proposed consent decree to

which the United States is a party "must be left, in the first instance, to the discretion of the

Attorney General." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981). Judicial

deference to a settlement is "particularly strong" when that settlement "has been negotiated by

the Department of Justice on behalf of a federal administrative agency like EPA[,] which enjoys

substantial expertise in the environmental field." *Lexington-Fayette*, 591 F.3d at 490, *quoting*

*Akzo Coatings*, 949 F.2d at 1436; *see also George A. Whiting Paper, 644 F.3d at 372*. Thus, where an agency committed to the furtherance of the public interest has negotiated an agreement, there is a presumption of validity.

<u>**Argument**</u>

A.     <u>**The Consent Decree Is Fair, Reasonable, and Consistent with Statutory Goals**</u>

     1.     **The Consent Decree Is Fair.**

In determining whether a proposed settlement is fair, a court need only ascertain whether the terms of the proposed consent decree reflect a reasonable compromise of the litigation. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 747 (9th Cir. 1995). As part of this analysis, courts consider "the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." *United States v. Hooker Chem. & Plastics Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985), *aff'd*, 776 F.2d 410 (2d Cir. 1985). In this case, the settlement embodied in the Consent Decree is the result of good-faith, arms-length bargaining between attorneys for the United States and ALTIVIA. After a careful analysis of the strengths and risks of litigation, the Parties arrived at a settlement that facilitates ALTIVIA's compliance with its CAA obligations and payment of an appropriate civil penalty. In exchange, ALTIVIA obtains resolution of the matter and avoids costly, continuing litigation of the governments' claims.

The fairness of the proposed Consent Decree is also inherent in the process by which the settlement was reached. The Parties engaged in extensive negotiations over a number of years, exchanging several letters and consent decree drafts. Throughout these negotiations, ALTIVIA was represented by experienced counsel well-versed in environmental law and procedure.

The proposed Consent Decree reflects the Parties' careful and informed assessment of the relative merits of each other's claims and defenses, while taking into consideration the costs and risks associated with litigating what would be a relatively complex case. Minimizing litigation benefits all Parties and spares the resources of the Court. *See Cannons*, 899 F.2d at 90 ("all too often, litigation . . . can squander valuable resources"). Not only the Parties, but also the public gains from the "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

The settlement also embodies a measure of compromise on the part of both sides. As with any fair settlement, the Parties benefit from the immediate resolution of the asserted claims and defenses, while foregoing the opportunity to seek unmitigated victory. *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation").

### 2. The Consent Decree Is Reasonable.

The "reasonableness" of a consent decree may be determined through consideration of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402-03 (D. Col. 1994). When determining whether a settlement is reasonable, "the decree's likely efficaciousness as a vehicle for cleansing the environment is of cardinal importance." *Cannons*, 899 F.2d at 89. The proposed Consent Decree is more than technically adequate in that it contains specific, tailored relief that addresses the violations alleged in the Complaint, imposes additional steps to reduce the potential for future violations, and will result in the

8

implementation of such actions in a far shorter time than if the Parties had fully litigated the action.

**3.       The Consent Decree Is Consistent with Relevant Statutory Goals.**

Another role of a court reviewing an environmental settlement submitted by the United States is to determine "whether the Decree comports with the goals of Congress."  *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987).  The primary objective of the CAA is to protect the public health and welfare and the environment.  The Consent Decree furthers these statutory goals by addressing, without further litigation delays or costs, the identified violations and taking steps to ensure improved compliance with the CAA in the future.

<u>**Conclusion**</u>

The settlement embodied in the Consent Decree constitutes the United States' best efforts to resolve this case fully and fairly in a manner consistent with the interests of the public. Having received no public comments, the United States continues to believe that the proposed Consent Decree is fair, reasonable, consistent with the purposes of the CAA, and in the public interest.

THEREFORE, the United States respectfully requests that the Court enter the proposed Consent Decree.

//

//

//

//

//

//

9

Dated: November 4, 2022.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


  /s Jeffrey A. Spector_____, Trial Attorney
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-4432

KENNETH L. PARKER
United States Attorney
Southern District of Ohio
ANDREW MALEK
Civil Chief
Southern District of Ohio
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
(614) 255-1580

OF COUNSEL:

CHARLES MIKALIAN
Associate Regional Counsel
EPA Region 5
77 West Jackson Blvd.
Chicago, IL  60604-3590
(312) 886-2242

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *United States of America's Unopposed Motion to Enter Consent Decree* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. mail or email. Parties may access this filing through the Court's system.

|  |  |
|---|---|
| 11/4/22 | s/ Jeffrey A. Spector |
| Date | Jeffrey A. Spector |